**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Ronald Peterson, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:17-cv-02107-MBS-MGB |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On August 9, 2017, Plaintiff Ronald Peterson ("Plaintiff") filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of Defendant Acting Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and for Supplemental Security Income Benefits ("SSI").

## I.      Procedural History

Plaintiff first filed his DIB and SSI applications on February 15, 2011, alleging disability beginning July 15, 2007. Plaintiff's application was denied initially and he did not appeal. Plaintiff filed the underlying DIB and SSI applications on July 30, 2013, again alleging disability beginning July 15, 2007. Tr. 260-263, 266-271. Plaintiff's application was denied initially, as well as on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on March 2, 2016. Tr. 52. The ALJ issued his decision on April 8, 2016. Tr. 32. He determined that Plaintiff had medically determinable impairments of "proctalgia with irritable bowel syndrome, rectal pain with

history of congenital rectal reconstruction, constipation and diarrhea," and that these impairments could reasonably be expected to cause Plaintiff's alleged symptoms. Tr 35. However, he further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms [were] not entirely credible." Tr. 40. Thus, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act. Tr. 46. Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on June 13, 2017, making the ALJ's decision the "final decision" of the Commissioner. Tr. 1.

On March 14, 2018, Plaintiff filed his brief challenging the ALJ's decision on four grounds: (1) the ALJ failed to adequately explain his findings regarding Plaintiff's residual functional capacity, as required under Social Security Ruling ("SSR") 96-8p; (2) the ALJ erred in finding that Plaintiff's "decreased concentration and memory impairment were not medically determinable impairments and subsequently fail[ed] to consider those impairments in the [residual functional capacity ("RFC")] assessment"; (3) the "ALJ failed to properly assess the medical source opinion evidence"; and (4) the ALJ failed to properly consider Plaintiff's subjective complaints as required under SSR 16-3p. ECF No. 18 at 17, 18, 22, 27. The Commissioner filed her response to Plaintiff's brief on April 19, 2018. ECF No. 19.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Mary Gordon Baker for a Report and Recommendation ("Report"). On October 17, 2018, the Magistrate Judge filed her Report recommending that the Commissioner's decision to deny benefits be affirmed. ECF No. 21. The Magistrate Judge addressed Plaintiff's first and fourth

arguments together, on the basis that "Plaintiff's allegations of error largely center on the ALJ's treatment of Plaintiff's alleged limitations as a result of his rectal issues including constipation and diarrhea." *Id.* at 6. As to Plaintiff's first issue, the Magistrate Judge concluded that the "ALJ thoroughly addressed the evidence in the medical record and articulated his reasoning for why the evidence supported his finding that Plaintiff's RFC need not accommodate frequent bathroom breaks." *Id.* at 9. As to Plaintiff's fourth issue, the Magistrate Judge concluded that "after a thorough discussion of the record, the ALJ ultimately found Plaintiff's testimony as to the severity of his fecal urgency [] inconsistent with the available evidence," and that "[w]hile Plaintiff argues that there is evidence in the record to support his subjective statements regarding his fecal urgency, such reweighing of the evidence is not within the province of this Court." *Id.* at 12. As to Plaintiff's third argument regarding the ALJ's assessment of his treating physician's medical opinions, the Magistrate Judge concluded that the ALJ properly explained his reasons for affording the treating physician's opinion little weight and for affording the opinions of the state medical consultants great weight, and further concluded that Plaintiff has "failed to demonstrate that the ALJ's conclusions regarding the medical opinions are unsupported by substantial evidence." *Id.* at 15. Lastly, as to Plaintiff's contention that the ALJ failed to consider Plaintiff's decreased concentration and memory loss as medically determinable impairments, the Magistrate Judge disagreed and found that the ALJ's opinion includes an examination of the evidence relevant to those limitations. *Id.* at 16. Plaintiff filed objections to the Report on October 31, 2018, ECF No. 23, to which the Commissioner responded, ECF No. 24.

This matter is now before the court for review of the Magistrate Judge's Report. The court is charged with making a *de novo* determination of any portions of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## II.    Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 4059(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. Applicable Law

An individual is eligible for DIB benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Under Title XVI of the Act, 42 U.S.C. §§ 1381-83(c), SSI benefits are available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, for DIB benefits, the claimant must prove he was disabled prior to his date last insured. *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant

engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(v). Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## IV.    Discussion

Plaintiff was born in 1963 and was forty-four years old as of his alleged disability onset date. Tr. 260. He has a high school education and past relevant work experience as a material handler and forklift operator. Tr. 63. Plaintiff alleges disability related to a congenital condition, a result of which he was born without a rectum and underwent rectal reconstruction surgery as a child. In response to the ALJ's question asking Plaintiff to describe what happened on the date he became unable to work, Plaintiff testified, "I remember one day I was working—driving and everything, and I kept getting this pain constantly . . . ." Tr. 62. Plaintiff testified that he experiences daily rectal pain and constant rectal bleeding that abates only with pain medication, which is not always

available to him.  Tr. 67, 68.  Plaintiff further alleges disability due to impaired concentration and memory loss.  ECF No. 18 at 18.

The ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2012; Plaintiff had not engaged in substantial gainful activity since July 15, 2007, the alleged onset date of disability; Plaintiff had severe impairments associated with history of congenital rectal reconstruction; Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; Plaintiff has the RFC to perform less than the full range of unskilled, light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with certain exceptions; and, considering Plaintiff's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that Plaintiff can perform.  Tr. 34-45.  Accordingly, the ALJ determined that Plaintiff is not disabled.

A.  Objection One: Assessment of Impairment at Step Two

Plaintiff argues that the ALJ "failed to explain why Peterson's decreased concentration and memory impairment were not medically determinable impairments." ECF No. 23 at 1.  He contends that the ALJ failed to consider the physicians' documentation of "cognitive slowing, decreased concentration and memory impairment," which, he asserts, support his subjective report of symptoms.  *Id.* at 2.  Plaintiff objects that the Magistrate Judge similarly did not address the physicians' documentation and rather "merely repeats the ALJ's dismissal of Peterson's reported problems."  *Id.*

Plaintiff's objection implicates step two of the sequential evaluation.[1]  The ALJ

determined that Plaintiff suffered from the following severe impairments: proctalgia with

irritable bowel syndrome; rectal pain with history of congenital rectal reconstruction;

constipation and diarrhea.  Tr. 35.  The ALJ also determined that Plaintiff suffered from

the following non-severe impairments: lumbar spine pain; hypertension; and diabetes

mellitus.  *Id.*  Plaintiff asserted additional complaints, which the ALJ determined were

not medically determinable impairments:  learning disability;[2] memory loss; dizziness;

sweating; gastroesphageal reflux disease; pain in hands; arthritis; malaise; allergic

rhinitis; and hypercholesterolemia.  *Id.*  Plaintiff takes issue only with the ALJ's

treatment of his learning disability, which the court hereafter refers to as concentration

deficit and memory loss.

A medically determinable impairment is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 1382c(a)(3)(D),

423(d)(3).  *See* 20 C.F.R. § 404.1508.  "An individual's statement as to pain or other

---

[1] Plaintiff styles his objection as a challenge to the RFC, which is determined at step four. ECF No. 23 at 1.  However, he asserts that the ALJ failed to identify his mental limitations as medically determinable impairments, which determination is made at step two.  *See* 20 C.F.R. §§ 404.1520(c), 416.920, 416.921.  The Magistrate Judge concluded that Plaintiff's challenge implicates the determination at step two.  ECF No. 21 at 15.  In reviewing Plaintiff's complaints, the ALJ determined not merely that the alleged memory loss and concentration deficit do not qualify as severe impairments, but that these conditions are not medically determinable impairments.  Therefore, the ALJ did not thereafter consider the allegations of memory loss and concentration deficit at subsequent steps of the sequential evaluation. Because the ALJ ceased to consider the allegations of memory loss and concentration deficit after his step two analysis, the court agrees with the Magistrate Judge that Plaintiff's objection implicates the step two determination.

[2] As the Magistrate Judge noted, Plaintiff appears to use learning disability and concentration deficit interchangeably.  ECF No. 21 at 16 n.5.

symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. §

423(d)(5)(A).  Rather:

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

*Id.*

The Magistrate Judge observed that "the ALJ considered every impairment alleged by Plaintiff or present in the medical evidence in determining which impairments were severe," and "expressly analyzed Plaintiff's alleged 'learning disability' and 'memory loss,' discussing Plaintiff's statements and the medical evidence concerning these impairments."  ECF No. 21 at 16 (citing Tr. 35).  The Magistrate Judge noted that "[r]elevant to Plaintiff's learning disability, the ALJ found that 'there is no documentary evidence to indicate that the claimant was in special education classes and per his testimony, he graduated from high school and received a diploma.'"  *Id.*  The Magistrate Judge also noted that relevant to the alleged memory loss, the ALJ stated:

> At the hearing, the claimant reported problems with memory loss, and when seen at MUSC in September 2014, reported problems with memory issues (Exhibit 15F, page 2); however, there is nothing in the documentary evidence indicating the claimant sought or received any treatment for memory problems, but that he reported symptoms of confusion and decreased concentration (Exhibit 15F, page 2). There are no other allegations of memory problems.

*Id.* (citing Tr. 35).

Plaintiff objects that the ALJ failed to consider specific evidence from the medical record documenting Plaintiff's issues with memory and concentration. ECF No. 23 at 2 (citing Tr. 640, 680-681, 683, 689, 692). These records include the following entries. A progress report dated September 26, 2014, states that Plaintiff "notes head injury as a child," and that "[t]he patient has memory issues, and his plan was reviewed a few times over the telephone since his initial visit." Tr. 635. A progress report dated January 16, 2015, notes that Plaintiff "has had partial compliance secondary to decreased comprehension from prior head injury," and lists "[m]emory impairment" and "[p]ositive for decreased concentration," under a section titled "[r]eview of [s]ymptoms." Tr. 680. Subsequent progress reports dated May 22, 2015, September 25, 2015, and December 18, 2015 again note Plaintiff's "partial compliance secondary to decreased comprehension from prior head injury," and list "[m]emory impairment" as a symptom. Tr. 683-684, 688-689, 690. At least one report notes that Plaintiff expressed confusion regarding what medication he was supposed to take, Tr. 683, and another report notes relief that Plaintiff's sister was present to discuss Plaintiff's treatment plan, Tr. 689.

In concluding that memory loss and concentration deficit do not constitute impairment, the ALJ considered only the September 2014 progress report.[3] Tr. 35 (citing Tr. 635). The ALJ's failure to address medical records relevant to one of the

_____

[3] Although the progress reports at issue are dated after March 31, 2012, the date on which Plaintiff was last insured, an ALJ "must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" *Bird*, 699 F.3d at 340-41 (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).

alleged impairments is problematic; the court has no way of knowing if the ALJ disregarded the subsequent progress reports, or simply did not see them. However, none of the progress reports reflect that Plaintiff's memory loss and/or concentration deficit are associated with a condition or impairment that is "established by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(5)(A).

The governing regulations state that "symptoms" are an individual's own description of his or her impairment, and, while they "must be considered along with signs and laboratory findings . . .[,] an impairment cannot be established on the basis of symptoms alone . . . ." SSR 83-17, 1983 WL 31246, at *1 (Jan. 1, 1983) (citing 20 C.F.R. §§ 404.1508, 404.1528, 404.1529, 416.908, 416.928, 416.929). "Signs" are "anatomical, physiological, or psychological abnormalities which can be observed, apart from symptoms." *Id.* "Signs must be shown by medically acceptable clinical diagnostic techniques." *Id.* The regulations define "[l]aboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1528(c), 414.928(c). A symptom or combination of symptoms cannot establish a medically determinable physical or mental impairment "unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96–4p, 1996 WL 374187, at *1 (Jul. 2, 1996). *See Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (discussing 42 U.S.C. § 423(c)(5)(A)); *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (holding that portions of treatment records purporting to describe "objective" findings, including "weakness in the distal lower extremities" and a

positive Romberg test, did not establish a medically determinable impairment because the doctor's observations did not include a diagnosis or a finding of impairment).

The progress reports reflect only the physician's observations. And, while there is mention in the reports that Plaintiff sustained a head injury as a child, there is no evidence that Plaintiff was either examined for a head injury or examined with respect to his memory loss and concentration deficit during the relevant timeframe so as to correlate the injury with the alleged symptoms.[4] The ALJ should have addressed the progress reports in his step two analysis because they are relevant to one of the conditions Plaintiff claimed as contributing to his alleged disability. However, without laboratory findings elsewhere in the record, the progress reports are insufficient to form the basis for finding an impairment at step two with respect to memory loss and concentration deficit. Accordingly, I find that the ALJ did not commit reversible error in failing to consider the progress reports.

B. Objection Two: Evaluation of Residual Functional Capacity

Plaintiff next argues that in assessing his RFC, the ALJ failed to account for the frequency and duration of Plaintiff's daily bathroom breaks. ECF No. 23 at 2. Plaintiff objects that "[w]hile the Magistrate Judge states that she was able to determine how the ALJ reached his conclusions, the Report and Recommendation does not explain how she made that determination." *Id.* at 4.

---

[4] Additionally, during the hearing before the ALJ, Plaintiff did not testify as to limitations with respect to memory and concentration, and his representative did not ask the ALJ to consider any such limitation in the hypotheticals presented to the vocational expert. *See* Tr. 52-104.

Social Security Ruling 96-8p provides the following guidance in assessing

residual functional capacity:

> Ordinarily, RFC is the individual's *maximum* remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion of the
> individual's abilities on that basis. A "regular and continuing basis"
> means 8 hours a day, for 5 days a week, or an equivalent work
> schedule. RFC does not represent the *least* an individual can do despite
> his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996) (emphasis in original).

In finding that the ALJ's assessment of an RFC without accommodation for

frequent bathroom breaks is supported by substantial evidence, the Magistrate Judge

observed:

> the ALJ expressly considered the medical evidence noted [] by Plaintiff.
> He discussed [] the treatment records from Dr. Maxwell [sic] wherein
> Plaintiff "reported problems with fecal incontinence and urgency and
> diarrhea." (R. at 38.) The ALJ noted that Plaintiff "reported improved
> control with the regular use of morning fiber . . . ." (R. at 38.) The ALJ
> expressly cited the exhibits containing the treatment records from Dr.
> Maxwell. (R. at 39.) The ALJ also cited the exhibits containing the
> treatment records from Dr. Thomas, and noted the statements Plaintiff
> made to Dr. Thomas about his "bowel syndrome symptoms." (R. at 39.)
> After a thorough analysis of the evidence relating to Plaintiff's fecal
> urgency issues, the ALJ concluded that "the statements from examining
> sources with regard to non-exertional limitations[] led to a conclusion that
> the degree of incapacitation is not as severe as expressed in the testimony
> and pre-hearing statements." (R. at 42.)

ECF No. 21 at 9. The Magistrate Judge concluded:

> While Plaintiff disagrees with the decision reached by the ALJ, the
> undersigned finds that the ALJ's determination of an RFC without
> accommodation for frequent bathroom breaks is supported by substantial
> evidence. The ALJ thoroughly addressed the evidence in the medical
> record and articulated his reasoning for why the evidence supported his
> finding that Plaintiff's RFC need not accommodate frequent bathroom
> breaks. In other words, the undersigned is able to determine how the ALJ
> reached his conclusions and whether such conclusions were supported by

substantial evidence. Accordingly, the ALJ did not err in this portion of
his RFC analysis.

*Id.* at 9-10.  The record reflects that the ALJ considered Plaintiff's claims of needing to

visit the bathroom frequently throughout the day as follows:

> Although the evidence shows that the claimant has [] medically
> determinable impairments that could reasonably be expected to produce
> the symptoms alleged, the evidence does not support the claimant's
> allegations of symptoms that render him totally disabled from employment
> . . . . He is able to perform activities of daily living. He reported he goes
> grocery shopping with his sister, [is] able to perform household chores and
> is capable of making small meals for himself . . . .
> Although he alleges problems with fecal urgency and
> incontinence/leakage and reports 10 trips to the restroom every day, he
> testified he does not use adult diapers or similar products and reported
> only occasional use of prescribed suppositories.
>
> The claimant's described daily activities are indicative of a fairly active
> and varied lifestyle and are not representative of a significant restriction of
> activities, constriction of interests, or impaired social functioning. During
> the hearing, the claimant sat without any visible signs of discomfort,
> answered all questions clearly and coherently, and he entered and exited
> the courtroom without any problem with a normal gait and used no
> assistive device when ambulating. Although he testified he was unable to
> sit for longer than 15-20 minutes at a time, I note he sat through his entire
> hearing, which began at 10:15 am and ended at 11:34 am using a
> cushioned chair pad and did alter his position or stand [sic]. The
> claimant's assertions regarding activities, and the statements from
> examining sources with regard to non-exertional limitations, led to a
> conclusion that the degree of incapacitation is not as severe as expressed
> in the testimony and pre-hearing statements. While the evidence of record
> substantiates some restrictions on the claimant's ability to engage in work-
> related activities, the evidence as a whole does not substantiate that total
> ability is so markedly limited as to prevent the performance of all work.

Tr. 42-43.  The ALJ additionally noted that Plaintiff testified he "is able to take care of

his own personal needs including bathing, grooming, dressing and feeding himself"; he is

"able to perform activities of daily living and testified he does no cooking or cleaning,

but does sweep, mop and vacuum"; he "occasionally attends church services and goes out

to restaurants"; "[h]is hobbies include watching basketball games on television"; "[h]e

spends his free time sitting around the house, visiting his aunt who lives next door, and working out with 5-pound dumbbells for upper body"; he walks his dog; and "[a]t times, he watches his relative's children ages 5, 6 and 7 . . . ." Tr. 37. *See* Tr. 68, 77, 78-79, 80, 81, 82, 83-85, 86. The ALJ concluded:

> [t]he total evidence of record does not substantiate the claimant's allegations concerning his impairments, symptoms and the ability to work. The record does not contain documentation or any other treatment notes, office records, hospital records or mental health records indicating the claimant received any specialized medical care. Therefore, I do not find the claimant allegations fully consistent with the evidence with regard to his allegations of pain so persistent and frequent that he is unable to perform any work activity.

Tr. 43 (citing SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996)).

Plaintiff objects that the ALJ chose to consider certain facts and ignore others. For instance, Plaintiff asserts, "his ability to sit is not the issue, although Peterson maintains that he has rectal pain while sitting and the record shows he had a special chair at the hearing and that he said he was in pain and needed to move around a little (Tr. 57, 76)." ECF No. 23 at 3. In addition, Plaintiff contends he testified "he could not sit to watch a 2-hour movie, he did not perform any household chores, when shopping he had to run to the bathroom and he did not stay in the store for a long time, and he sat around the house," *id.* at 3, and therefore "his activities of daily living are not indicative of an ability to stay at a workstation without needing additional bathroom breaks." *Id.* Finally, Plaintiff argues the ALJ improperly attributed significance to the fact that he does not use adult diapers, stating the ALJ "fail[ed] to explain how adult diapers would restore his ability to work." *Id.*

Whether the ALJ adequately supported his decision not to account in the RFC for the frequency and duration of Plaintiff's daily bathroom breaks is a close call. However,

the court finds that the omission is not supported by substantial evidence, and therefore remand is appropriate. In assessing the RFC, the ALJ relied on Plaintiff's testimony regarding his activities of daily living, Plaintiff's decision not to use prescribed suppositories or wear adult diapers, and Plaintiff's conduct during the hearing. The court addresses these bases seriatim.

First, the court finds that Plaintiff's activities of daily living are not particularly relevant to the limitation caused by Plaintiff's frequent need to use the bathroom. While Plaintiff testified to walking his dog, helping his sister with errands and chores, and attending church services, he expressly qualified his participation in those activities on account of his pain. *See, e.g.,* ECF No. 77, 78, 80. Accordingly, when Plaintiff participates in the above activities, his participation is limited in nature and short in duration. And his participation does not appear to prevent him from accessing the bathroom whenever the need arises. For instance, when he walks his dog he does not travel far from the house. *Id.* at 84 ("I walk halfway down the road . . . ."). When he accompanies his sister on a grocery store errand, he anticipates he will need to use the bathroom, *id.* at 81 ("I don't walk too much because I know when I walk with her with the buggy and everything, I got to run to the bathroom"), or he will simply wait for her in the car. *Id.* Plaintiff testified that "[m]ost of the time, I sit around the house," or that he "might walk over next door to [his] aunt's house." *Id.* at 83. Plaintiff also testified that he will occasionally sit outside and watch his nieces and nephews for a few minutes at a time. *Id.* at 84, 85. In each of these scenarios, Plaintiff has unlimited access to a bathroom; therefore, Plaintiff's participation in these activities is not at odds with the average number of daily bathroom visits he purports to need.

As for medication, Plaintiff testified that he could not afford the suppositories his physician prescribed to help him with the sensation of needing to use the bathroom. ECF No. 8-2 at 76. Plaintiff also testified that while his doctors had recommended surgery, he could not afford a surgical consultation. *Id.* at 70-71. As the Magistrate Judge noted, the ALJ may not discredit Plaintiff's symptoms on the basis that he did not avail himself of medicine, supplies, or procedures that he could not afford. ECF No. 21 at 11 n.2 (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986)). The ALJ also noted that Plaintiff does not wear adult diapers. However, the ALJ did not account for the fact that Plaintiff has access to the bathroom at any time throughout the day because he spends his days at home. And Plaintiff testified that he visits the bathroom multiple times during the night. ECF No. 8-2 at 79. There is no need for Plaintiff to wear adult diapers, and incur the associated expense and effort, if he can take a bathroom break whenever he requires, day or night. Accordingly, whether Plaintiff currently wears adult diapers has no bearing on his ability to perform work in the national economy.

With respect to Plaintiff's demeanor during the hearing, the hearing lasted approximately one hour and fifteen minutes. Plaintiff's ability to sit for this length of time without requiring a bathroom break is not necessarily at odds with his representation that he requires on average ten bathroom breaks a day. And, the court notes that the ALJ did not ask Plaintiff if he was wearing an adult diaper at the time of the hearing, or if he had otherwise taken preparations that would ensure he could sit for a period of time without access to the bathroom.

The court will not substitute its judgment for that of the ALJ; however, the ALJ must support his factual findings with substantial evidence. *Johnson v. Barnhart*, 434

F.3d 650, 653 (4th Cir. 2005) (citing *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). Plaintiff testified that he experiences the need to use the bathroom on average ten times a day, and that each bathroom trip lasts between fifteen and thirty minutes.[5] ECF No. 8-2 at 82. The ALJ did not take specific issue with Plaintiff's credibility, but rather pointed to references in the record to show that Plaintiff is not as limited by the sensation of fecal urgency as he represents himself to be. However, the court finds on examination of the ALJ's references that the evidence supports, rather than detracts from, Plaintiff's representations regarding how often he visits the bathroom. Accordingly, the court finds that the RFC assessment is not supported by substantial evidence, to the extent it fails to account for Plaintiff's need for frequent bathroom breaks.

C. Objection Three: Opinion of Plaintiff's Treating Physician

Finally, Plaintiff objects that the ALJ "failed to properly consider the relevant factors in assigning little weight to Peterson's treating gastroenterologist," because he failed to consider that the treating physician is a specialist in the field of gastroenterology. ECF No. 23 at 4. Plaintiff further asserts that the ALJ failed to consider supporting evidence from a second gastroenterologist. *Id.* at 5.

---

[5] It is unclear if Plaintiff requires ten bathroom breaks during a twenty-four hour period, or during a work day. The final hypothetical the ALJ posed to the vocational expert involved an individual who, in addition to the limitations ultimately assigned to Plaintiff, "will be off task 20 percent of the time in addition to normal breaks," due to "the need for frequent bathroom breaks." ECF No. 8-2 at 98-99. The vocational expert testified that no work is available to such an individual, *id.* at 99, and that breaks between five and fifteen minutes occurring three to five times a day likely would not be tolerated in the workplace, *id.* at 101. On remand, the ALJ should engage in fact finding to determine more precisely the average number of bathroom breaks Plaintiff requires during a standard work day.

Pursuant to 20 C.F.R. § 404.1527(c), the Commissioner will evaluate every medical opinion received and will accord greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. However, the opinions of treating physicians are not necessarily entitled to controlling weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). "[W]here the opinions of the treating physicians . . . are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178.

On review, the Magistrate Judge found that the ALJ properly explained his reasons for affording the opinion of Arul Thomas, M.D., Plaintiff's treating gastroenterologist, little weight, in accordance with the factors outlined in 20 C.F.R. § 404.1527(c). ECF No. 21 at 14. The Magistrate Judge additionally found that the ALJ provided "reasons for affording the opinions of the state agency medical consultants 'great weight.'" *Id.* at 14-15. Finally, the Magistrate Judge found that Plaintiff "failed to demonstrate that the ALJ's conclusions regarding the medical opinions are unsupported by substantial evidence." *Id.* at 15.

Dr. Thomas completed a medical source statement for Plaintiff in September 2014. Dr. Thomas opined that Plaintiff was limited as follows: could not stand or walk;

could sit for fifteen minutes at one time and sit for sixty minutes in a workday; could lift

five pounds on an occasional basis and lift no weight on a frequent basis; could never

bend or stoop and only occasionally balance; could frequently perform fine and gross

manipulation with either hand; could occasionally raise either arm over shoulder level;

could never work around dangerous equipment or operate a motor vehicle; could

occasionally tolerate heat, cold, and exposure to dust, smoke, or fumes; and could

frequently tolerate exposure to noise. Tr. 632. Dr. Thomas opined that Plaintiff suffered

from moderate pain with objective signs of pain associated with limitation of motion and

nerve and muscle findings resulting from prior major anal surgery. Tr. 633. Dr. Thomas

further opined that Plaintiff would require ten to fifteen unscheduled breaks a day, lasting

fifteen minutes in duration, and would likely be absent from work five times a month as a

result of his condition. *Id.*

By contrast, the state agency medical consultants opined that Plaintiff could stand

and/or walk six hours in an eight-hour work day and sit for six hours in an eight-hour

work day. The state agency consultants opined that Plaintiff retained the residual

functional capacity to perform work activity. Tr. 105-111, 112-118, 121-122, 140-154,

155-169.

The ALJ first reviewed Plaintiff's medical record, and concluded in relevant part

as follows:

> The record reveals the claimant had history of congenital rectum
> reconstruction. The evidence of record reveals beginning July 2012, five
> years after the alleged onset date, he was seen at MUSC colo/rectal clinics
> for complaints of anorectal pain. During calendar year 2012, he was seen
> in July and August (Exhibits 7F, 10F and 15F); he was seen on two
> occasions during calendar year 2013 in June and November (Exhibits 7F,
> 10F and 15F); and was seen on three occasions during calendar year 2014,
> in February, May and September (Exhibits 12F, 15F and 16F). There are

no treatment records after September 2014. Treatment records in February, May and September 2014, showed he reported improvement in his anorectal pain (Exhibits 12F, 15F and 16F). Treatment records from his primary treating physicians at Sumter Family Healthcare repeatedly showed normal physical examinations and diagnoses of controlled adult onset diabetes meelitus and controlled benign essential hypertension. He reported compliance with diet and exercise (walking daily), compliance with prescribed medications with the severity of impairment well controlled (Exhibits 13F and 17F).

Tr. 40-41. The ALJ then discussed Dr. Thomas's opinions. He afforded little weight to those opinions and explained his decision as follows:

Dr. Thomas saw the claimant on only two occasions in February and September 2014. The medical record does not contain any follow-up treatment records from Dr. Thomas. I find the limitations including in the medical source statement [sic] seemed to be based on allegations made by the claimant rather than by examination or treatment by Dr. Thomas. His medical records do not support such a debilitating condition of the claimant, which, in itself, rebuts the extreme limitations Dr. Thomas proposes . . . . I find his opinion is not supported by his own treatment records and was not consistent with the overall findings of other health professions [sic] included in the record.

Tr. at 43. The ALJ further explained that "[n]one of the claimant's other treating or examining physicians have offered any opinion regarding disability," and "[n]o other physician assessed any restrictions or limitations." [6] *Id.* The ALJ also noted that he

---

[6] The court notes that the record contains a second opinion that supports in part Dr. Thomas's restrictions. In an opinion dated March 23, 2017, gastroenterologist Derek Feussner, M.D. observed that "for a number of years Mr. Peterson was able to work despite having difficulties but that over time, his condition has progressively worsened causing increased rectal pain and he stopped working." ECF No. 8-2 at 9. Dr. Feussner opined that "[t]he symptoms Ronald Peterson experiences from the severe rectal pain and spasms, the need to urgency use of the bathroom [sic] and days in which he is mostly in the bathroom due to diarrhea would likely interfere with his being able to do any consistent work for 8 hours at a time." *Id.* at 10. Dr. Feussner also opined that Plaintiff "would be totally unable to attend any work environment in a predictable and reliable manner." *Id.* Plaintiff submitted Dr. Feussner's statement to the Appeals Council, which determined that the statement did not relate to the period at issue and did not affect the decision regarding whether Plaintiff was disabled beginning on or before April 8, 2016. *Id.* at 2.

afforded great weight to the reports authored by the state agency medical consultants. Tr. at 43 (citing SSR 96-5p). *See* 20 C.F.R. §§ 404.1527(e), 416.927(e), 404.1513a ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). The court finds that the ALJ provided specific, clear reasons for the weight given to Dr. Thomas's medical opinion. *See* SSR 96-2p, 1996 WL 374188, at *5 (Jul. 2, 1996).

Plaintiff also objects that the ALJ "failed to consider supporting evidence such as Dr. Koro's support of Dr. Thomas's findings, assessment, and plan." ECF No. 23 at 5. Plaintiff refers to the progress report signed on October 2, 2014 by Nabeel S. Koro, M.D., who noted that he had "discussed [Plaintiff] with [Dr. Thomas] and [he] agree[s] with the findings, assessment, and plan." Tr. at 636. However, the assessment and plan that Dr. Thomas authored and with which Dr. Koro agreed is as follows:

1) Suspected Proctalgia fugax, with some improvement with albuterol INH. Could not afford NTG creme. Repeated straining and hypersensitivity to defecate from chronic and leakage likely worsening.
2) Anal leakage contributed to by prior surgery. Has not made total attempt to manage conservatively.
3) IBS, constipation-diarrhea predominant.

--Encouraged more routine use of loperamide. This can reduce colonic transit and possibly reduce delivery of stool content to the rectum. Start with 2 mg daily.
--Decrease snacking and try to eat larger meals. May reduce frequent stooling.
--Decrease high fat snacks.

--For two weeks, try using albuterol INH once daily to see if it reduces rectal pain. If not improved, continue to use at onset of pain as best as he can.
--Try to reduce straining and frequent BMs.
--Use Levsin PRN.
--Repeat colonoscopy 3 years due to TVA polyp.
--Filled out disability paperwork.

Tr. at 636. There is no evidence that Dr. Koro agreed with Dr. Thomas's opinion, discussed above, regarding Plaintiff's capacity for work. The ALJ explained his finding that Dr. Thomas's opinion regarding Plaintiff's capacity for work was not supported by the record evidence. For the reasons previously stated, the court concludes that the ALJ's finding is supported by substantial evidence.

### IV.      Conclusion

The court declines to adopt the Report and Recommendation for the reasons stated herein. The Commissioner's final decision of no disability is **REMANDED**.

**IT IS SO ORDERED.**

s/Margaret B. Seymour_____
Margaret B. Seymour
Senior United States District Judge

February 1, 2019
Charleston, South Carolina